# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

KENDRA L. YOUNG,

       Plaintiff,

vs.

JOANNE B. BARNHART,

       Defendant

**No. 04CV3086**

**ORDER**

_____

    This case involves an application for disability benefits (SSD) under Title II of the Act, 42 U.S.C. §401 <u>et seq.</u> Plaintiff, Kendra L. Young, (hereinafter "Young"), filed this action requesting reversal of the Commissioner's decision that she is not disabled.  In the alternative, she asks this Court to remand to the ALJ for further proceeding consistent with the applicable law.  After careful consideration of the parties' written and oral arguments, the Court reverses the decision of the ALJ and awards benefits.

## I.   INTRODUCTION:

    Young was born on November 25, 1963.  She is currently 42 years old.  Young was 37 when she filed her application for disability benefits on September 5, 2001, and 40 years old at the time of the administrative law hearing.

Young alleged that she became disabled on May 27, 2000, due to severe back pain. Young also suffers from restrictive airway disease, knee problems, hypothyroidism, migraines, and depression. Young's application for benefits was denied initially and on reconsideration. She had a hearing before an Administrative Law Judge ("ALJ") on November 2, 2003, and was denied benefits again on March 19, 2004. The Appeals Council denied Young's request for review on August 30, 2004. Therefore, the ALJ's decision stands as the final decision of the Commissioner.

## II. BACKGROUND

Young testified that she's forty years of age, five foot eight inches, and two-hundred sixty-nine pounds. R. 310. She also testified that she has a high-school education and a bachelor of science in nursing from Iowa University. Young is a registered nurse, ("RN"). R. 310. Young stated that when she started working, she weighed between 150-175 pounds and that the roughly one-hundred pound weight gain was attributable to depression and inactivity. R. 310.

At the time of our hearing, Young was receiving $2,200/month from a private disability insurance program that

commenced in October of 2000 and expired in October of 2005. R. 330. Young stated that she has not had medical insurance since February of 2000. R. 311. Young testified that she last worked full time in May of 2000 as a school nurse. R. 311. Young testified that she quit this job due to financial and personal reasons and began looking for another job Monday through Friday. R. 312.

Young stated that she "broke" her back at the end of August 2000. R. 312. Young testified that prior to her back problems, she would lift 100 plus pounds, be on her feet for twelve hours at a time as a hospital nurse, and fifty percent of the time as a home health nurse. R. 313. Prior to the date of Young alleging disability, she earned over $30,000/year for the previous ten years. R. 55.

Young describes the pain in her lower back as someone "stabbing" her, heavy pressure, and all her muscles knotted up. R. 314. Young stated that physical therapy and injections provide little relief. R. 315. Young testified that most of the time the medication that she takes for her back will help, but there are times when they do not and times when she does not take them because of the drowsy effects of

the medications.  R. 316-17.

Young also stated that she has had three knee surgeries R. 318); suffers from migraine headaches R. 318); asthma and chronic bronchitis R. 320); gastroesophageal reflux disease R. 321); and depression R. 321).

Young testified that she would tire very quickly, and it would be very painful to carry a gallon of milk.  R. 325. Young further testified that she can stand for a couple of minutes at a time, walk short distances, sit for various amounts of time, depending on the time of day, and climb stairs very slowly.  R. 325-26.

Young is on several medications for her various ailments, including: Vicodin (for pain); Flexeril (for pain); Melatonin; Trazodone; Xanax (for anxiety); Flonase; Imitrex (for migraines); Effexor, Premarin, and Synthroid (for thyroid). R. 298.

## A.   Medical Record

On August 30, 2000, Young went to Dr. Timothy Frey due to back pain.  R. 238.  Dr. Frey diagnosed Young with "[l]ow back pain consistent with acute lumbosacral strain."  In September of 2000, Young underwent x-rays, which Dr. L.M. Steinberg

concluded showed Spondylolysis[1] with Grade I spondylolisthesis[2] at the lumbosacral level and minimal narrowing of the lumbosacral disc space. R. 146.

In October of 2000, Young was admitted as an outpatient for a lumbar myelogram with CT enhancement. R. 151. The MRI indicated "possible disc extrusion at L4-L5." R. 151. In November of 2000, a CT scan of Young's back revealed bilateral pars interarticularis defects L5-S1 and very mild broad based disc bulging, R. 165, and a lumbar myelogram indicated a left sided conjoined nerve root at L5. R. 166.

On November 14, 2000, Dr. Jerome Hansen saw Young. R. 167-68. He concluded after reviewing her MRI, lumbar myelogram, and CT scan that Young has "fairly developed degenerative changes at L3-4, L4-5, and L5-S1. Additionally, she has bilateral spondylosis of L5 with grade I spondylolisthesis of L5 on S1. X-rays of her lumbar spine demonstrate bilateral complete pars intra articularis

---

[1] "[D]issolution of a vertebra..." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1743 (30th ed. 2003).

[2] "[F]orward displacement...of one vertebra over another, usually of the fifth lumbar over the body of the sacrum..." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1743 (30th ed. 2003).

defect[3]." R. 168. Dr. Hansen recommended that Young see Dr. Howard Rosenthal concerning a possible surgical intervention. R. 168-69.

Dr. Rosenthal came to many of the same conclusions, i.e., Young has grade I spondylolisthesis secondary to spondlylolysis at L5-S1 and degenerative disc disease. R. 172. Dr. Rosenthal consulted Young on surgery, but given her younger age, Dr. Rosenthal advised to exhaust all other options prior to surgery. R. 172. Young had several other follow-up visits in the spring of 2001.

On October 16, 2001, Young was sent to Dr. Robert Pulcher for psychological consultation in order to determine eligibility for SSI benefits. R. 213. Dr. Pulcher diagnosed Young with major depressive disorder (unspecified), back deterioration causing fractures, migraine headaches, chronic bronchitis, and a GAF[4] score of 55. Around this same time is when Young separated from her husband, moved back to Iowa, and ultimately divorced her husband.

---

[3] Also known as "spondylolysis" (see above); this is the weakest portion of the vertebrae.

[4] GAF score is used by psychologists and psychiatrists to measure a person's functioning at the time of the session.

Back in Iowa, Young began seeing Dr. Diane Heindl. Dr. Heindl indicated that she began seeing Young on January 10, 2002, most notably for back pain. R. 274. On May 13, 2002, Dr. Heindl narrated a letter concerning Young's application for disability benefits. R. 274. Dr. Heindl indicated that Young suffers from "severe low back pain and depression." R. 274. Dr. Heindl also noted that Young has several other health problems including, migraine headaches, asthma, and hypothyroidism. R. 274. Dr. Heindl notes that Young is "quite limited in her activity level," should only lift a maximum of fifteen pounds, limited in sitting, limited in work environment due to asthma, and not limited in handling, hearing, seeing, or speaking. R. 274. Dr. Heindl saw Young on several other occasions for various ailments. R. 296-302. On April 21, 2003, Dr. Heindl filled out a questionnaire regarding whether or not she agreed with the Social Security Administration's assessments of Young's impairments and abilities. R. 294. On four out of five of the questions, Dr. Heindl disagreed with the SSA's determination as to Young's abilities and impairments. R. 294. Dr. Heindl opined that Young can lift or carry less than ten pounds occasionally

(Social Security Administration "SSA" concluded she could carry or lift up to 20 pounds occasionally), cannot lift any amount of weight frequently (SSA concluded up to 10 pounds frequently), can stand and/or walk at least two hours in an eight hour day (SSA determined six hours in an eight hour day), cannot sit more than twenty-minutes without alternating positions (SSA concluded can sit up to 6 hours), can occasionally climb, stoop, kneel, crouch, or crawl (SSA conclude the same), and cannot continuously handle objects. R. 294.

Dr. Heindl also concluded that Young is not "capable of performing a job on a sustained basis. She has frequent exacerbations of her symptoms of pain which limit even basic activities of daily living..." R. 295. Finally, Dr. Heindl stated that the use of narcotic pain relievers, muscle relaxers, and nerve pain modifiers are helpful, but do not control the pain. R. 295.

Young also began seeing a therapist, Floralyn Perry, M.A., for counseling in January of 2002 on a weekly basis. R. 305. Ms. Perry filled out a medical assessment questionnaire concerning Young. R. 303-04. In this assessment, Ms. Perry

determined that Young could make occupational and performance adjustments less than twenty-percent of the time during an eight-hour day. R. 303-04. Ms. Perry also noted that Young has been diagnosed with Adjustment Disorder, depression with anxiety, and ADHD. R. 305.

## B. Vocation Expert

The ALJ called a vocational expert ("VE") to testify. The ALJ asked various versions of hypothetical questions to the VE. The first hypothetical question limited the hypothetical person to:

> 20 lbs. occasionally, 10 lbs. frequent lifting. She could carry a few pounds a short distance. She could stand between two and six hours a day. Could sit for up to one hour at a time before change of position, and could to [sic] that for six to eight hours per day. She could occasionally stoop, climb, kneel, or crawl. Should not work in areas where there's excessive dust, fumes, heat, or humidity. Should not perform any fast-paced or stressful work and should not have to handle complaints, supervise others, handle emergency situations, or do work that requires strict deadlines to complete.

R. 332.

The VE was asked whether or not this hypothetical person could return to the same past relevant work as Young. The VE

opined that would not be "feasible" because the past relevant work requires too much lifting.  R. 332.

The second question posed to the VE was whether or not there were transferable skills for other work.  R. 332.  The VE concluded that there would be transferable skills.  R. 332.  For example, a patient scheduler, 500 state-wide jobs and 25,000 nationally or a medical records clerk, 2,000 state-wide jobs and 300,000 nationally.  R. 333.

The third variation inquired about a high-school educated forty-year old performing unskilled work.  The VE stated there are several jobs available.  R. 333.  For example, a library worker or a  clean environment/commercial office helper.  R. 334.

Finally, the VE was asked whether this hypothetical person could only sit for 20 minutes before having to change positions, could only stand for a couple of minutes, or the person had headaches that lasted several hours.  R. 334.  The VE testified that these additional characteristics would preclude employment.  R. 334.

**C.  Findings of the ALJ**

The ALJ found that Young has a combination of impairments

that are severe.  R. 15.  However, the ALJ concluded that these severe impairments do not meet or equal the criteria of any social security listed impairment.  R. 15.  The ALJ went through a list of doctor visits that Young has been to over the past several years.  R. 18-20.

The ALJ determined that Dr. Heindl's opinions are not entitled to controlling weight because the ALJ determined that Dr. Heindl's opinions are "inconsistent with other substantial evidence in the record."  R. 19.  The ALJ stated that Dr. Heindl's opinions are contrary to Dr. Hanson's and Dr. Rosenthal, but the ALJ does not give any specific reasons as to why they are contrary.  R. 19.  The ALJ further concludes that Dr. Heindl's opinions appear to be based solely on Young's subjective complaints and limitations.  R. 19.

The ALJ also determined that the findings of Ms. Perry could not be acceptable because she is not an acceptable "medical source" under the regulations.  R. 20.  Ms. Perry is a therapist and under 20 C.F.R. § 404.1513(a), she does not qualify as a medical source.  The ALJ also determined, without any supporting facts, that Dr. Heindl's determination that Young may suffer from ADHD came from Ms. Perry's conclusion.

R. 20.

Instead, the ALJ decided to accept the opinion of two state agency medical consultants, i.e., Dr. Kathleen King and Dr. Dee Wright. R. 20. Dr. King determined that Young suffered from a "non-severe" depression. R. 20. Dr. Wright concluded that Young's depression causes a "moderate" limitation in her ability to maintain concentration, persistence, and pace" and would be capable of performing non-complex, repetitive activity. R. 20.

By following the evaluation of mental impairment techniques in 20 C.F.R. 404.1520(a), the ALJ determined that Young has "mild" restrictions in daily living activities, "mild" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, and pace, and no repeated episodes of decompensation. R. 20.

Next, the ALJ went on to determine Young's residual functional capacity ("RFC"). R. 20. The ALJ determined that Young's allegations of total disability are not credible because they are inconsistent with the medical records as a whole. R. 23. The ALJ concluded that the medical findings

are relatively mild and would produce some back pain, but not to the severity described by Young. R. 23. The ALJ then determined that Young's activities are inconsistent with her allegations of memory and concentration problems because she teaches Sunday school and participates in Bible studies. R. 23. It should be noted that Young never stated that she "teaches," but merely attends. R. 327-28. The ALJ also commented on the fact that Young has never been to the emergency room ("ER") for her migraines, never had a distinct injury that led to back problems, and never been prescribed the use of a cane. R. 23. Finally, the ALJ stated that the fact that Young receives $2,200/month from a private insurer is an incentive not to go back to work. R. 23. However, Young ceased receiving these payments in October of 2005.

Based on the ALJ's previous observances, the ALJ determined that Young has the RFC to:

> lift up to 20 pounds occasionally and ten pounds frequently. She can carry up to ten pounds for short distances. She can sit up to one hour at a time for a total of six hours in an eight-hour with normal breaks. She can stand or walk for a total of about two hours in an eight-hour day with normal breaks. She can stand or walk for a total of about two hours in an eight-hour day with normal breaks. She can only

> occasionally stoop, climb, kneel, or crawl.
> She cannot tolerate exposure to excessive
> concentrations of dust, fumes, heat, or
> humidity. She cannot perform fast-paced or
> highly stressful work. She cannot perform
> work that requires her to handle
> complaints, supervise others, handle
> emergency situations, or meet strict
> deadlines for completion.

R. 23. Based on this RFC, the ALJ stated that the VE and the ALJ believe the claimant cannot perform her past relevant work. R. 23.

Next, the ALJ determined that Young is capable of performing other jobs that exist in significant numbers in the national economy, e.g., patient scheduler and medical records clerk, which would not require more than regular pace, and library page and office helper. R. 24. Finally, the ALJ stated that the hypothetical questions posed to the VE accurately depict the objective and subjective evidence in the record. R. 24. Based on those questions and the VE's answers that significant jobs exist in the national economy, the ALJ concluded that Young is not "disabled." R. 24.

## III. DISCUSSION

This Court must determine whether the Commissioner's decision to deny disability benefits is "supported by

substantial evidence on the record as a whole." <u>Lorenzen v.</u> <u>Chater</u>, 71 F.3d 316, 318 (8th Cir. 1995).

**A. The Court's Jurisdictional Basis**

In <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987), the United States Supreme Court delineated the steps which precede a district court's review of a Social Security appeal:

> The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. § 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered de novo by the state agency. 20 C.F.R. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq. (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.967 et seq., 416.1467 et seq. (1986). Once the claimant has exhausted these administrative remedies, he may seek review in federal district court. 42 U.S.C. §405(g).

<u>Yuckert</u>, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291 96 L. Ed. 2d 119 (1987).

Section 1383(c)(3) of Title 42 of the United States Code

provides, "The final determination of the Secretary after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title. . . ."  In pertinent part, 42 U.S.C. § 405(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . .brought in the district court of the United States for the judicial district in which the plaintiff resides... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions . . . .

Accordingly, this Court may affirm, reverse or remand the ALJ's decision.

**B.  The Substantial Evidence Standard**

The Eighth Circuit has made clear its standard of review in Social Security cases.  If supported by substantial evidence in the record as a whole, the Secretary's findings

are conclusive and must be affirmed. <u>Grissom v. Barnhart</u>, 416 F.3d 834, 837 (8th Cir. 2005); <u>Smith v. Shalala</u>, 31 F.3d 715, 717 (8th Cir. 1994) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g) (Supp. 1995)). "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" <u>Maresh v. Barnhart</u>, 438 F.3d 897, 898 (8th Cir. 2006) (quoting <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)). In the words of the Supreme Court, substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citing <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

The Eighth Circuit has taken pains to emphasize that, "[a] notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" <u>Wilson v. Sullivan</u>, 886 F.2d 172, 175 (8th Cir. 1989) (quoting <u>Jackson v. Bowen</u>, 873 F.2d 1111, 1113 (8th Cir. 1989)).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the

17

> record as a whole," however, requires a
> more scrutinizing analysis.  In the review
> of an administrative decision, "[t]he
> substantiality of evidence must take into
> account whatever in the record fairly
> detracts from its weight." Thus, the court
> must also take into consideration the
> weight of the evidence in the record and
> apply a balancing test to evidence which is
> contradictory.

Id.

The Court, however, does "'not re-weigh the evidence or review the factual record de novo.'"  Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996) (quoting Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994)). Likewise, it is not this Court's task to review the evidence and make an independent decision. Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996) (citing Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)).  "If, after review, [it is] possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [this Court] must affirm the denial of benefits." Id. Even in the case where this Court "might have decided the case differently", this Court cannot reverse if there is substantial evidence to support the Commissioner's decision.  Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (citing Krogmeier v.

<u>Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002)).

The process, however, is not stacked in the Commissioner's favor because, "[t]he standard requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner]'s action." <u>Cooper v. Secretary</u>, 919 F.2d 1317, 1320 (8th Cir. 1990) (citing <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir. 1989)). In cases where the Commissioner's position is not supported by substantial evidence in the record as a whole, the Court must reverse. <u>See</u> <u>Lannie v. Shalala</u>, 51 F.3d 160, 164 (8th Cir. 1995). "'[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice.'" <u>Battles v. Shalala</u>, 36 F.3d 43, 44 (8th Cir. 1994) (quoting <u>Sears v. Bowen</u>, 840 F.2d 394, 402 (7th Cir. 1988)).

## C. Determination of Disability

Social Security Disability Benefits may be awarded to disabled individuals who meet certain income and resource guidelines. 42 U.S.C.A. § 423 (d)(1)(A). In connection with the award of such benefits to an adult:

> [A]n individual shall be considered to be
> disabled . . . if he is unable to engage in
> any substantial gainful activity by reason
> of any medically determinable physical or

mental impairment which can be expected to
result in death or which has lasted or can
be expected to last for a continuous period
of not less than twelve months.

42 U.S.C.A. § 423 (d)(1)(A).

An impairment will only be considered of such severity if
the individual is "not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful activity which
exists in the national economy. . . ." 42 U.S.C.A. § 423
(d)(2)(A).

Determination of a claimant's disability involves a five
step analysis. 20 C.F.R. § 404.1520 (a-f). In the first step,
the ALJ determines if the Claimant had engaged in past
substantial gainful activity. Next, the ALJ decides if the
Claimant has an impairment. Third, the ALJ must look at the
regulations to determine if the impairment meets or is
medically or functionally equal to a Listing in Appendix 1,
Subpart P of Regulation No. 4. Fourth, the ALJ assesses the
Claimant's residual functional capacity (RFC), to see if the
Claimant could perform his past relevant work. At the fifth
and final step of the analysis, the Social Security Commission
must prove that there are a significant number of jobs (other

than his past relevant work) in the national economy that a person of the same age, education, past work experience, and physical and mental residual functional capacity can perform. 20 C.F.R. § 404.1520 (f).

To acquire Social Security disability benefits, initially the claimant has the burden of showing 'that she is unable to perform her past relevant work.'" <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001) (quoting <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998)). This encompasses the first four steps of the analysis. "If the claimant carries [her] burden, 'the burden of proof then shift to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.'" <u>Id</u>. There must be some medical evidence to support the ALJ's determination of the claimant's residual functional capacity and this evidence should address the claimant's ability to function in the workplace. <u>Dykes v. Apfel</u>, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir.

2000).

**D.   Review of the ALJ's Decision**

"Deference to the ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence." <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005).  By that same token, the ALJ's credibility determination should not just be stated as a conclusion in the guise of findings, but should be closely and affirmatively linked to substantial evidence.  <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).

Additionally, the law in the Eighth Circuit is well settled that an ALJ may not discredit a claimant's subjective complaints of pain, discomfort, or other disabling limitations simply because there is a *lack of objective evidence*.  <u>See Ramirez v. Barnhart</u>, 292 F.3d 576, 581 (8th Cir. 2002) (noting that the ALJ may not discredit a claimant solely because the objective medical evidence does not fully support the claimant's subjective complaints of pain.) Instead, the ALJ may only discredit the subjective complaints if they are inconsistent with the record as a whole.  <u>See</u> <u>Dixon v. Barnhart</u>, 353 F.3d 602, 605 (8th Cir. 2003); <u>see also</u> <u>Bishop</u>

22

v. Sullivan, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

Under Polaski, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. Polaski, 739 F.2d at 1322. When the ALJ considers all of the Polaski factors and still makes a determination to reject a claimant's subjective complaints, the ALJ must give "good reasons" for discrediting the claimant's testimony. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). IF an ALJ discredits a claimant's testimony and gives good reasons for doing so, the ALJ's decision should normally receive deferential treatment. Id. (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).

In this case, using the five-step sequential evaluation required by 20 C.F.R. § 404.1520, the ALJ found initially at

step one that Young has not engaged in substantial gainful activity at any time since May 27, 2000.  R. 24.  At step two, the ALJ determined that Young suffers from the following severe impairments: "chronic low back pain secondary to degenerative disc disease in her lumbar spine and bilateral spondylosis at L5, bilateral complete intra articularis defect at L5, and grade I spondylolisthesis of L5 on S1; environmental allergies and asthma; migraine headaches; a structural defect in her right knee; obesity; and depression." R. 24.  However, the ALJ determined that these impairments individually and in combination do not reach the level of severity required by  Appendix 1, Subpart P, Regulations No. 4.  R. 20.

At step four, the ALJ determined that Young cannot perform her past relevant work.  R. 23.  Finally, at step five, the ALJ determined that Young could perform other jobs that exist in significant numbers in the national economy, i.e., a patient scheduler and a medical records clerk.  R. 24.

The primary issue is whether the Secretary fulfilled its burden that "the claimant retains the physical residual functional capacity (RFC) to perform a significant number of

other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education, and work experience." <u>Frankl v. Shalala</u>, 47 F.3d 935, 937 (8th Cir. 1995) (citing <u>Reed v. Sullivan</u>, 988 F.2d 812, 815 (8th Cir. 1993)).

The ALJ determined that the opinion of Dr. Diane Heindl, the treating physician, should not be given "controlling weight," but the "state agency medical consultants [opinions] appear to be more consistent with the objective medical evidence in the record." R. 19. The ALJ is referring to the opinions of Dr. Kathleen King and Dr. Dee Wright. See *supra* p. 9.

It should first be noted that "the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole..." <u>Hancock v. Sec'y of Health, Educ., and Welfare</u>, 603 F.2d 739, 740 (8th Cir. 1979). Furthermore, "the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits." <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000).

Dr. Jerome Hanson evaluated Young on several occasions. R. 168-69, 173, 203-05, 249-50. Dr. Hanson not only physically examined Young, but examined her MRI results of her lumbar spine, her lumbar myelogram, and post-contrast lumbar CT scan. R. 168. Dr. Hanson concluded that there is no question that Young suffers from bilateral L5 spondylosis with early grade I spondylolisthesis of L5 on S1, which causes her "intractable back pain." R. 168.

On January 10, 2002, Young moved to Iowa and started seeing Dr. Diane Heindl. R. 274. Dr. Heindl indicated that Young is "quite limited in her activity level." R. 274. Dr. Heindl also opined that Young is unable to stoop, climb, kneel or crawl and should not lift more than fifteen pounds. R. 274. Lastly, Dr. Heindl opined that Young was incapable of performing a job on a sustained basis. R. 295. Dr. Heindl determined this after well over two years of seeing Young on a continued basis.

The ALJ summarily states that Dr. Heindl's opinions are not entitled to controlling weight because they are "inconsistent with other substantial evidence in the record" and are not "consistent" with the findings of Dr. Hanson and

Dr. Rosenthal.  R. 19.  This Court is not persuaded by the ALJ's brief rationale for not according Dr. Heindl's opinions more weight.

First as previously noted, Dr. Hanson concluded that Young suffers from the same condition that Dr. Heindl notes, probably degenerative disc disease, Grade 1 spondyloli-sthesis and a pars intra-articularis defect at C5 on S1.  R. 168, 274.  Dr. Hanson opined that Young has "intractable" back pain and referred her to another doctor, Dr. Howard Rosenthal, about possible surgery.  R. 168.

Dr. Rosenthal, who the ALJ also opined had an "inconsistent" opinion compared to Dr. Heindl, diagnosed Young with degenerative disc disease at L3 through L5 and S1, spondylolisthesis secondary to spondylolysis at L5-S1, and disc herniation and bulging.  R. 172.  Dr. Rosenthal also recommended exhausting all other avenues prior to surgery because of her younger age.  However, Dr. Rosenthal never opined on Young's ability to work on a sustained-competitive basis, probably due to the fact that he only saw her on one occasion, unlike Dr. Heindl who saw Young for over two years before making her assessment.

The ALJ also inexplicably opined that Dr. Hiendl's "opinions appear to be based mostly on the claimant's self-description of her limitations, and not on the objective medical evidence." R. 19. The ALJ cannot guess at how a treating physician came to her medical conclusions of a patient. Furthermore, "an ALJ may not discount a medical diagnosis because it is made on the basis of what the doctor is told by [her] patient." Davis v. Callahan, 989 F. Supp. 907, 912 (S.D. Iowa 1997) (citing Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997). This Court is persuaded that the ALJ is substituting his opinion for that of the doctor. "It is the law of the Eighth Circuit that the ALJ must not substitute his opinions for those of the physician." Davis, 989 F. Supp. at 912 (citing Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir. 1990)).

This Court is persuaded that the ALJ incorrectly and without substantial evidence determined Young's RFC, based in part on the ALJ's own medical conclusions and the opinions of two state medical consultants, i.e., Dr. King and Dr. Wright, that never saw Young. See *supra* pp. 9 and 21. The ALJ is required to "always give good reasons...for the weight [given

to the treating sources opinion,]" which this Court concludes that the ALJ did not give satisfactory reasons for the weight given to Dr. Heindl's opinions, besides simply summarily dismissing them.   20 C.F.R. § 404.1527(d)(2).

This Court is also persuaded that the treating physician's, Dr. Heindl, opinion should have been given more weight due to the fact that her opinions are consistent with the objective medical record as a whole and she has been examining Young for well over two years.   Dr. Heindl's opinion is entitled to great weight if it is supported by "medically acceptable clinical or diagnostic data."   See Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).   Based on this Court's review of the record as a whole, this Court is persuaded that Dr. Heindl's opinions are supported by "medically acceptable clinical or diagnostic data."   Id.

It should also be noted that Young has a lengthy history of migraine headaches that have worsened since the onset of her back problems.   R. 214, 272, 274, 297-302, 305.   Although the drug Imitrex helps her headaches, Young testified that the drug does not always work.   R. 320.   Young also testified that her migraines would not last more than three hours with

medicine, otherwise they could last over sixteen hours.  R. 319.

When the vocational expert was asked a hypothetical question based on the limitations that more accurately reflect Young's RFC, the vocational expert opined that there is no employment available.  R. 334-35.  For example, if the original hypothetical person could also only sit for twenty minutes at a time, stand for a couple of minutes, and walk short distances, employment would be precluded.  R. 334. Employment would also be precluded if this person also had headaches that could last several hours or was unable to complete a full day work several times a week.  R. 334-35.

The ALJ's original hypothetical question presented to the vocational expert was deficient with regards to Young's physical and mental limitations.  This Court is persuaded that the hypothetical questions with Dr. Heindl's limitations are supported by substantial evidence and the medical record as a whole.

It should also be noted that the Commissioner argued orally that the fact that Young worked six hours a week after her alleged onset date demonstrates Young's ability to perform

substantial gainful activity.  This Court is not persuaded by this argument.  "An ALJ should not penalize a claimant who, prior to an award of benefits, attempts to make ends meet by working in a modest, part-time job."  Cline v. Sullivan, 939 F.2d 560, 565-66 (8th Cir. 1991).  Furthermore, a claimant does not have to prove that she is bedridden or completely helpless to be found disabled.  Working on an average of an hour a day is far from substantial gainful employment.

## IV.  CONCLUSION

The Court has carefully considered the arguments of the parties and closely examined the record and is persuaded that there is not substantial evidence in the record as a whole to support the conclusion made by the ALJ.

The record clearly establishes that Young is disabled. Remanding this case for further proceedings would only delay Young's receipt of disability benefits (SSD), therefore, "an immediate order granting benefits without remand is appropriate."  Cline v. Sullivan, 939 F.2d 560, 569 (8th Cir. 1991); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir. 1982).  Judgment shall be entered reversing the ALJ's decision of denying such benefits.

**Upon the foregoing,**

**IT IS HEREBY ORDERED** that the decision of the ALJ is reversed and the Commissioner is directed to compute and award disability benefits to Young with an onset date of May 13, 2002. This is the date that the Dr. Heindl explicitly said that Young is disabled and this Court finds that the opinion of Dr. Heindl deserves controlling weight and is consistent with the record as a whole.

A timely application for attorney fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412 ("EAJA"), must be filed within thirty days of the entry of final judgment in this action. Thus, if this decision is not appealed, and Young's attorney wishes to apply for EAJA fees, he must do so within 30 days of the entry of the final judgment based on the Order in this case.

**IT IS SO ORDERED** this 24th day of April, 2006.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa